UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD PRINCE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. EDCV 16-01556-KES<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Mohammad Prince ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.
## BACKGROUND

Plaintiff applied for DIB and SSI on December 5, 2013, alleging the onset of disability on October 11, 2013. Administrative Record ("AR") 172-93; 194-99. An ALJ conducted a hearing on September 30, 2015, at which Plaintiff, who was represented by an attorney, appeared and testified. AR 32-62.

On February 8, 2016, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 14-31. The ALJ found that Plaintiff had the following

severe impairments: "diabetes mellitus; degenerative disc disease of the cervical spine and lumbar spine; and valvular heart disease with a history of thoracic/abdominal aortic dissection." AR 19. Notwithstanding his impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the demands of light work with the additional limits that he can only perform "postural activities frequently; must avoid concentrated exposure to hazards such as unprotected heights, open bodies of water, and moving mechanical parts of equipment, tools, or machinery." AR 20.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a store laborer, but could work as a cashier, mail clerk, or sales attendant. AR 25. Therefore, the ALJ concluded that Plaintiff is not disabled. AR 26.

## II.

## ISSUES PRESENTED

The sole issue presented is whether the ALJ properly evaluated Plaintiff's testimony concerning the functionally limiting effects of his pain. Joint Stipulation ("JS") at 4.

## III.

## DISCUSSION

**A.   The ALJ Properly Evaluated Plaintiff's Pain Testimony.**

   **1.   Applicable Law.**

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingerfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014). The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d at 1283-84 & n.8. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. Smolen, 80 F.3d at 1284; Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).[1]

---

[1] The Social Security Administration ("SSA") recently published SSR 16-3p, 2016 SSR LEXIS 4, Policy Interpretation Ruling Titles II and XVI: Evaluation of (Cont.)

3

If an ALJ cites multiple reasons for discounting a claimant's pain testimony, one of which is not supported by the record, that error would be harmless so long as the ALJ's reliance on the other reasons was proper. As the Ninth Circuit has repeatedly noted, "an ALJ's error [is] harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." Molina v. Astrue, 674 F.3d at 1104 (citing Bray v. Astrue, 554 F.3d 1219, 1227 (9th Cir. 2009); Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004)).

### 2. Plaintiff's Testimony.

Plaintiff provided testimony concerning the limiting effects of his pain at the hearing and in a pain questionnaire and function report (AR 249-250 and AR 251-58, both dated March 1, 2014), all of which were considered by the ALJ. AR 21.

At the hearing, he testified that his diabetes affects him by causing "burning, tingling feelings underneath" his feet. AR 49. He could not estimate how often this happens, but related it to forgetting to take his medication or being unable to take his medication after it was stolen while he was homeless. AR 50-51.

The ALJ asked Plaintiff why he stopped working in October 2013. AR 47. Plaintiff responded by identifying numerous health conditions (including back pain, bleeding ulcers, diabetes, high blood pressure, and an aortic dissection) and explaining that he had "burn[ed] up" the "points" he needed to obtain leave from

---

Symptoms in Disability Claims. SSR 16-3p eliminates use of the term "credibility" from SSA policy, as the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. Murphy v. Comm'r of Soc. Sec. Admin., 2016 U.S. Dist. LEXIS 65189, at *25-26 n.6 (E.D. Tenn. May 18, 2016). SSR 16-3p took effect on March 16, 2016, approximately one month after the ALJ issued his decision on February 8, 2016, and therefore is not applicable to the ALJ's decision in this case. Id.

his employer and "couldn't get no more." AR 48. The ALJ then specifically asked about the aortic dissection, asking if he "continued to have problems related to that heart condition" after being hospitalized at University of California-Irvine Healthcare ("UCI"). Id. Plaintiff responded that he had "blacked out" three times, but candidly admitted he did not know if that was attributable to his heart condition or low blood sugar. Id. He admitted that at least one time, which occurred while he was still working, he blacked out due to low blood sugar, because his co-workers took him "to the clinic, and the nurse tested [his] sugar level was down." Id. After the nurse gave him something to eat, he "was fine." Id.

In his pain questionnaire, Plaintiff indicated that he suffers from "unusual fatigue" and requires naps or rest "more than twice a day" sometimes lasting "more than 2 hours." AR 249. He did not mention numbness, tingling, or blacking out.

In his function report, he stated that he does not do house or yard work due to pain. AR 254.[2] He reported that he does not "go out on activities due to pain," but he can drive, shop once or twice a week, go out when he "needs something," and go to his mosque "once in a while" for Friday prayers. AR 252-55. Again, he did not mention numbness, tingling, or blacking out. Instead, he reported that his condition does not affect the use of his hands. AR 256.

### 3. The ALJ's Treatment of Plaintiff's Testimony.

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause "some" of his alleged symptoms, his statements concerning the "intensity, persistence and limiting effects of these symptoms are not credible" to the extent they are inconsistent with the RFC. AR 21. The ALJ offered at least three reasons for this finding.

---

[2] In contrast, in his "Staying Healthy Assessment" dated about one year later, Plaintiff indicated that he did exercise or moderate physical activity such as walking or gardening five days a week. AR 470.

First, while the ALJ found that Plaintiff's diabetes was a "severe" impairment, he also found that there were "no objective medical findings that ever showed [Plaintiff's] blood sugar or a1c1 levels were elevated." AR 19, 21-22. Rather, Plaintiff "reported to the internal medicine consultative examiner his blood sugar averaged in the 120 range, which would be normal, and he denied any numbness or tingling in his feet." AR 22, citing AR 403. The ALJ also found that other than one record, Plaintiff "never alleged neuropathy symptoms to his treatment providers, and there were no findings indicating numbness [or] tingling …." AR 22, citing AR 471.

Second, the ALJ found Plaintiff's allegations "regarding his heart condition … not credible." AR 22. The ALJ interpreted Plaintiff's hearing testimony as saying that "because of his heart problems, he had blacked out a number of times." Id. The ALJ disbelieved this, because "there was no evidence of hospitalization or that the claimant even reported blacking out to treating physicians." Id.

Third, the ALJ summarized Plaintiff's treatment records and determined that he had received only "routine and conservative treatment since the alleged onset date" which the ALJ found inconsistent with his claims of disabling pain. Id.

a. Diabetes.

Plaintiff contends that contrary to the ALJ's finding, he has "complained to providers that he suffers neuropathic symptoms to his hands and left leg, consistent with his hearing testimony." JS at 7, citing AR 471. He further contends that "the record does indicate elevated blood sugar at times." Id., citing AR 373 and AR 421.

The medical record at AR 470-71 is a "Staying Healthy Assessment" that Plaintiff completed on March 19, 2015. He indicated, "I have left leg at upper portion burning tingling sensation. I get numb hand to sleep from pain in my lower back sometimes." AR 471. This record was cited by the ALJ as the one time Plaintiff reported "neuropathy symptoms." AR 22. Ultimately, the Staying

6

1  Healthy Assessment does not reference diabetes and Plaintiff attributes the
2  numbness in his hand to lower back pain. The record supports the ALJ's finding
3  that the Staying Healthy Assessment was the only occasion when Plaintiff reported
4  numbness to his treating doctors.

5  The records Plaintiff cites at AR 373-74 pertain to Plaintiff's admission to
6  UCI from April 20, 2013 through April 22, 2013 to evaluate a diagnosed aortic
7  dissection. AR 365. UCI ultimately determined there was "no acute surgical
8  intervention required," and he was discharged. Id. While at UCI, he had his
9  glucose level tested seven times and compared to a "reference range" of 70-115.
10 AR 373-74. Of those seven readings taken over two days, six were higher than 115
11 (i.e., 120, 128, 132, 137, 144, 161) and one was within the reference range (i.e.,
12 103). Id.

13 The records Plaintiff cites at AR 421-27 pertain to Plaintiff's admission to
14 AHMC Anaheim Regional Medical Center ("AHMC") from April 16, 2013
15 through April 20, 2013 for abdominal pain. AR 429. While at AHMC, he had his
16 glucose level tested three times and compared to a reference range of 70-99. AR
17 421, 432, 435. Plaintiff's highest glucose reading during this hospitalization period
18 was 121 (AR 421), well within the range that the ALJ deemed normal. See AR 22.

19 Again, Plaintiff's alleged an onset date of October 11, 2013. AR 172. The
20 ALJ did not err in failing to consider UCI and AHMC medical records that pre-date
21 Plaintiff's alleged onset date.

22 Instead, the ALJ relied on the report of consultative examiner Dr. To
23 prepared on April 4, 2014, within the claimed period of disability. AR 399-404.
24 Knowing that he was being evaluated as part of applying for benefits, Plaintiff told
25 Dr. To that his blood sugars "are averaging in the 120s," he has never been
26 hospitalized for hyperglycemia, and he denied any "numbness and tingling in the
27 feet." AR 399. Dr. To also performed a neurological examination and concluded
28 that Plaintiff's sensory perception was "grossly intact." AR 402. The ALJ

appropriately considered that Plaintiff's hearing testimony concerning his diabetes symptoms conflicted with the symptoms he reported to Dr. To in finding him less than fully credible.

        b.      Heart Condition/Blackouts.

Plaintiff fails to identify any records showing that he ever complained to a doctor about blacking out or sought treatment for blacking out, whether due to his heart condition, diabetes, or any other impairment. Instead, Plaintiff complains that the ALJ should not have relied on the incident described in Plaintiff's hearing testimony, because that occurred prior to the onset date. JS at 7. Since Plaintiff did not attempt to obtain such early records from the clinic nurse, he argues that it was unfair for the ALJ to find his testimony less than credible for lack of corroboration. JS at 7-8.

Plaintiff testified that he had blacked out three times since being hospitalized at UCI (which was in April 2012), but he only provided specifics about one incident which was before his alleged onset date. AR 48. If the other two incidents occurred after his alleged onset date, then the ALJ rightfully expected there to be some mention of blacking out in Plaintiff's relevant medical records after October 2013, but there is none. If the other two incidents occurred before his alleged onset date (which Plaintiff does not clarify in his brief), then they would be irrelevant to the ALJ's determination of disability.

Because the record is ambiguous concerning when Plaintiff blacked out, and he might have corroborating medical records that pre-date October 2013, the Court finds that the lack of corroboration cited by the ALJ is not a "clear and convincing" reason for discounting Plaintiff's credibility. This error, however, was harmless, because the other two reasons cited by the ALJ are both clear and convincing and supported by substantial evidence.

        c.      Treatment History.

An ALJ may rely on evidence of a conservative course of treatment to

discredit a claimant's allegations of disabling symptoms. See, e.g., Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain).

Plaintiff contends that his course of treatment was not conservative, because he received "epidural injections for pain prior to the alleged onset date, as well as prescriptions for narcotic pain medication (Norco) and surgery." JS at 8, citing AR 393 (June 2013 Norco prescription for shoulder pain) and AR 564 (2009 injections).

The ALJ's finding was specifically limited to the relevant period after the alleged onset date. AR 22. Plaintiff has failed to point to a single record from after October 2013 and argue that it shows something other than a conservative course of treatment. Plaintiff, therefore, has failed to undermine the ALJ's finding. Plaintiff's conservative course of treatment since the alleged onset date is a second clear and convincing reason to discount his subjective symptom testimony.

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: March 21, 2017

_____
KAREN E. SCOTT
United States Magistrate Judge